IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

Laurie Range, *et al.*,

    Plaintiffs,

v.

Kenneth Douglas, *et al.*,

    Defendants.

Case No. 1:10-CV-473

District Judge Barrett

## ORDER & OPINION

This matter is before the Court upon Defendants Estate of Bernard Kersker, Estate of Dr. Frank Cleveland and Hamilton County Board of Commissioner's Motion to Dismiss and Motion for Summary Judgment. (Doc. 123). Plaintiffs have filed a Motion to Strike Defendants' Motion for Summary Judgment (Doc. 124). These motions have been fully briefed. (Docs. 125, 126, 127, 129).

Also before the Court is Defendants' Motion for Reconsideration (Doc. 130) and Motion to Certify Questions to the Ohio Supreme Court (Doc. 131). These motions have also been fully briefed. (Docs. 134, 135, 139, 140).

### I. BACKGROUND

The claims in this case are brought by the families of three women who were sexually abused by Kenneth Douglas while their dead bodies lay in the Hamilton County Morgue. Douglas worked as a Morgue Attendant from 1976 until 1992. During that period of time, Douglas was supervised by the former County Coroner, Dr. Frank Cleveland, and the former Morgue Director, Bernard Kersker.

In ruling on Defendants' Motion to Dismiss and for Summary Judgment, this Court found that the County Defendants were not entitled to statutory immunity from Plaintiffs' state law claims. *Range v. Douglas*, 878 F. Supp. 2d 869 (S.D. Ohio 2012). However, this Court found that the County Defendants were entitled to qualified immunity from Plaintiffs' claim under 42 U.S.C. § 1983.

Plaintiffs and the County Defendants appealed this decision. (Docs. 117, 118). On appeal, the Sixth Circuit affirmed the denial of statutory immunity under Ohio law,[1] and affirmed the grant of qualified immunity from Plaintiffs' federal claims. *Range v. Douglas*, 763 F.3d 573 (6th Cir. 2014).

Therefore, Plaintiffs' remaining claims are for negligent retention and supervision, and negligent and intentional infliction of emotional distress under Ohio law.[2] The remaining defendants are the Estate of Bernard Kersker, Estate of Dr. Frank Cleveland and Hamilton County Board of Commissioners ("the County Defendants").[3] In their Motion to Dismiss and Motion for Summary Judgment, the County Defendants move for dismissal of Plaintiffs' remaining claims.

---

[1] However, the Sixth Circuit found that it did not have jurisdiction over Defendants' interlocutory appeal of the denial of qualified immunity from state law claims brought by Karen Range. *Range v. Douglas*, 763 F.3d 573, 581 (6th Cir. 2014) (explaining that prior to 2003, Ohio only provided liability from liability and not from suit, and therefore under the collateral order doctrine the court did not have interlocutory jurisdiction over the immunity claim arising out of the abuse of Karen Range).

[2] Because there are no exceptions to immunity under Ohio Revised Code § 2744 for the intentional tort of intentional infliction of emotional distress, Plaintiffs do not bring their claim of intentional infliction of emotional distress against the County. *See Hubbard v. Canton City Sch. Bd. of Educ.*, 780 N.E.2d 543, 546 (Ohio 2002) (quoting *Wilson v. Stark Cty. Dept. of Human Servs.*, 639 N.E.2d 105, 107 (Ohio 1994)).

[3] Claims remain pending against Defendant Kenneth Douglas, but the Clerk of Courts has entered an entry of default against Douglas. (Doc. 138).

## II. ANALYSIS

### A. Motion to Strike

Plaintiffs argue that Defendants have failed to show good cause for filing their Motion for Summary Judgment beyond the deadline set in this Court's scheduling order, and therefore, Defendants' Motion to Dismiss and Motion for Summary Judgment should be struck.  Defendants respond that their motions are timely because the Sixth Circuit's finding on appeal that the harm to Plaintiffs was not forseeable means that Plaintiffs' state law claims must be dismissed.

Under Federal Rule of Civil Procedure 16(b)(4), a scheduling order "may be modified only for good cause and with the judge's consent."  In addition to Rule 16's explicit "good cause" requirement, a district court must determine the potential prejudice to the nonmovant.  *Leary v. Daeschner*, 349 F.3d 888, 909 (6th Cir. 2003).

Following remand from the Sixth Circuit, this Court held a status conference on September 29, 2014.  At that time, Defendants announced their intention to file additional dispositive motions.  This Court set a deadline of October 31, 2014 for any motions.  Defendants filed their motions by that date.  While this Court did not specifically grant Defendants leave to file their motions, the Court finds that Defendants had good cause for filing the motions and Plaintiffs are not prejudiced by the filing of the motions.  Many of the legal issues raised by Defendants did not surface until after the Sixth Circuit made its rulings on appeal.  Therefore, Plaintiffs' Motion to Strike Defendants' Motion for Summary Judgment is DENIED.

### B. Motion for Summary Judgment

Federal Rule of Civil Procedure 56(a) provides that summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The moving party has the burden of showing an absence of evidence to support the non-moving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Once the moving party has met its burden of production, the non-moving party cannot rest on his pleadings, but must present significant probative evidence in support of his complaint to defeat the motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986).

Defendants argue that they are entitled to dismissal of Plaintiffs' state law claims for negligent and intentional infliction of emotional distress and negligent retention and supervision based on the law of the case. Defendants argue that the Sixth Circuit's dismissal of Plaintiffs' constitutional claims based on foreseeability is fatal to Plaintiffs' claims under Ohio law.

Plaintiffs respond that the Sixth Circuit's decision as to Plaintiff's state-law claims was limited to the issue of immunity and did not address the merits of the claims.

"[T]he law of the case doctrine is limited to those issues decided in the earlier appeal, and the district court may therefore consider those issues not decided expressly or impliedly by the appellate court." *Westside Mothers v. Olszewski*, 454 F.3d 532, 538-39 (6th Cir. 2006) (citing *Hanover Ins. Co. v. Am. Eng'g Co.*, 105 F.3d 306, 312 (6th Cir. 1997)).

The issues decided by the Sixth Circuit were that this Court did not err in denying immunity to the County Defendants from the state law claims brought by Plaintiffs

4

Appling and Hicks; and this Court properly granted qualified immunity to the County Defendants from Plaintiffs' § 1983 claims. The Sixth Circuit explained that it was not deciding the issue of foreseeability: "although the parties' arguments often stray into the underlying merits of the state tort claims—including issues of foreseeability, causation, tortious interference, evidence of harm, duty of care, and intervening causation—these questions are not properly before us." *Range v. Douglas*, 763 F.3d at 582.

However, the Sixth Circuit did decide that in the context of a substantive due process claim under § 1983, Kersker and Dr. Cleveland did not act with deliberate indifference to a known risk that Douglas would harm the bodies, and the conduct of Kersker and Dr. Cleveland did not "shock the conscience." In defining what it means to shock the conscience, the Sixth Circuit pointed out: "the 'shocks the conscience' standard is not a font of tort law, but is instead a way to conceptualize the sort of egregious behavior that rises to the level of a substantive due process violation." *Range v. Douglas*, 763 F.3d at 590. The Sixth Circuit also explained that "[d]eliberate indifference in the constitutional sense requires that the officials knew of facts from which they could infer a 'substantial risk of serious harm,' that they did infer it, and that they acted with indifference 'toward the individual's rights.'" *Id.* at 591.

In analyzing the facts of this case under these standards, the Sixth Circuit explained:

> We are not convinced by Plaintiffs' argument that "any touching" of the bodies without a forensic purpose amounts to a "serious harm" in the constitutional sense. If a drunk person moves a dead body's arm, it may amount to inappropriate behavior or even a tort violation. If done intentionally by a government actor, it's even arguable that it's a constitutional violation. *See generally Chesher v. Neyer*, No. 1:01–cv–0056 (S.D.Ohio July 28, 2004) (holding that certain touching done intentionally met the shocks-the-conscience standard). But we cannot say

5

> that protection against the possible risk of such an occurrence is "so rooted in the traditions and conscience of our people as to be ranked as fundamental." *See EJS Props.*, 698 F.3d at 862. Nor can we agree that a jury could find that Kersker and Dr. Cleveland were aware of a "substantial risk" of what might be a more serious constitutional harm such as desecrating a body. While we agree that lapses in judgment by people under the influence are generally recognized, Plaintiffs have pointed to no cases, scientific or sociological knowledge, or literature suggesting that there is a substantial risk that an inebriated person will desecrate a body. Nor is there evidence that these Defendants knew of such a risk.
>
> Viewing the facts in the light most favorable to Plaintiffs, a jury could find much to condemn in the conduct of Kersker and Dr. Cleveland, perhaps even recklessness. But a jury could not conclude that these Defendants were aware of facts from which they could infer a substantial risk of the kind of serious harm that occurred here, that they did infer it, and that they acted with indifference toward the rights of the families involved. We simply cannot say that the behavior of these Defendants could show deliberate indifference to Plaintiffs' constitutionally protected rights such that their actions "shock the conscience." The district court did not err in concluding that there was no violation of Plaintiffs' clearly established rights by Kersker or Dr. Cleveland.

*Range v. Douglas*, 763 F.3d 573, 591-92 (6th Cir. 2014).

The Sixth Circuit's discussion of deliberate indifference as part of a constitutional violation is separate and apart from any analysis of a state law claim based on negligence or a claim for intentional infliction of emotional distress. As the Sixth Circuit has explained: "A finding of negligence does not satisfy the deliberate indifference standard." *Perez v. Oakland Cnty.*, 466 F.3d 416, 431 (6th Cir. 2006)

Therefore, while the Sixth Circuit found that Plaintiffs were unable to support a constitutional claim based on deliberate indifference, the Sixth Circuit did not decide issues related to negligence or proximate cause. Accordingly, the law of the case doctrine is not applicable to this issue, and the County Defendants are not entitled to summary judgment on these grounds.

The County Defendants appear to argue, for the first time, that Plaintiffs' state law claims should be dismissed based on a lack of actual or constructive knowledge on the part of Kersker and Dr. Cleveland.[4]  Because this Court found that Kersker and Dr. Cleveland were immune from the state law claims brought against them by the family members of Karen Sue Range and dismissed those claims, this argument necessarily only has applicability to the state law claims brought by the family members of Charlene Appling and Angel Hicks and the state law claims brought by the family members of Karen Sue Range against the County.

Under Ohio law, the elements of a claim of negligent retention or supervision are: "(1) the existence of an employment relationship; (2) the employee's incompetence; (3) the employer's actual or constructive knowledge of such incompetence; (4) the employer's act or omission causing plaintiff's injuries; and (5) the employer's negligence in hiring or retaining the employee as the proximate cause of plaintiff's injuries." *Lutz v. Chitwood*, 337 B.R. 160, 169 (S.D. Ohio 2005) (citing *Peterson v. Buckeye Steel Casings*, 133 Ohio App.3d 715, 729, 729 N.E.2d 813 (1999)).

The elements of a claim for intentional infliction of emotional distress under Ohio law are:

> 1) that the actor either intended to cause emotional distress or knew or should have known that actions taken would result in serious emotional distress to the plaintiff; 2) that the actor's conduct was so extreme and outrageous as to go beyond all possible bounds of decency and was such that it can be considered as utterly intolerable in a civilized community; 3) that the actor's actions were the proximate cause of plaintiff's psychic injury; and 4) that the mental anguish suffered by plaintiff is serious and of a nature that no reasonable man could be expected to endure it.

---

[4]In their earlier Motion to Dismiss and Motion for Summary Judgment, Defendants did not argue the merits of the state law claims, but instead argued that they were entitled to qualified immunity under Ohio Revised Code § 2744.03.  (See Doc. 82, PAGEID # 2024-2028).

*Pyle v. Pyle*, 11 Ohio App.3d 31, 463 N.E.2d 98, 103 (1983) (internal citations and quotation marks omitted).

In addressing a claim for negligent infliction of emotional distress, the Ohio Supreme Court has explained that:

> In Ohio, a person may pursue a claim for damages for emotional distress without manifestation of physical injury. *Paugh v. Hanks* (1983), 6 Ohio St.3d 72, 6 OBR 114, 451 N.E.2d 759. This is premised upon a negligent or intentional act that results in emotional injuries that are foreseeable. *Id*. The emotional injury or distress must be beyond trifling mental disturbance, mere upset, or hurt feelings. It must be both severe and debilitating. *Id*. at 78, 6 OBR 114, 451 N.E.2d 759.

*Banford v. Aldrich Chem. Co.*, 932 N.E.2d 313, 319 (Ohio).

While the Sixth Circuit did not rule on the merits of these state law claims, the Sixth Circuit did discuss the issue of knowledge on the part of Kersker and Dr. Cleveland. In concluding that the County was not entitled to immunity under Ohio Revised Code § 2744.03(A)(5), the Sixth Circuit explained that there was a genuine issue of fact as to whether Kersker's failure to supervise Douglas was wanton and reckless:

> Turning to the record here, there is significant evidence that by the time of the abuse of the two women, Kersker knew that Douglas was an alcoholic and knew that he drank and had sex while on duty at the morgue. Two witnesses—Douglas and Chavis—said they told Kersker about the drinking and sex, and this was corroborated by one of Douglas's co-workers. Others testified that Douglas came to work smelling like booze, shaking from drug-use, and disheveled-looking. This is sufficient for a jury to find that Kersker knew that Douglas was mis-using his time alone at the morgue. A jury could also find that Kersker knew Douglas presented a risk of harm to the bodies—Kersker admitted that one of the risks of a morgue attendant being drunk on the job is that he might disrespect or harm the bodies. And there is no question that Kersker failed to mitigate any risk. He kept Douglas on shifts where Douglas would be alone several days a week, he never administered drug tests or installed cameras, and there is evidence to suggest that he maintained a very lax environment in which other employees also had enough freedom to drink,

8

> do drugs, and have visitors. Kersker admitted that he was willing to put up with some bad conduct such as tardiness and absences from work because he "needed" Douglas. A jury could conclude from this evidence that Kersker "disregard[ed] a known risk substantially greater than that necessary to make the conduct negligent." *See Chesher*, 477 F.3d at 802 (internal quotation marks omitted). It is not necessary for Kersker to have disregarded a risk of necrophilic acts, only that he disregarded a risk that Douglas would harm the bodies in some way.

763 F.3d at 585-86. Based on this same evidence in the record, the Sixth Circuit found that Kersker was not entitled to immunity under Ohio Revised Code § 2744.03(A)(6)(b), because there were "genuine issues as to whether Kersker's failures were wanton and reckless." *Id.* at 586.

The Sixth Circuit then turned to Dr. Cleveland's immunity and explained:

> The record as to Dr. Cleveland is slightly different. Kersker was most immediately responsible for supervising Douglas, he designed the shift rotation scheme that left Douglas alone, and the evidence suggests that it was Kersker who knew about Douglas's drinking and sex at the morgue. The clearest indication of Dr. Cleveland's knowledge is testimony from Kersker that he kept Dr. Cleveland informed and told Dr. Cleveland about Douglas's tardiness and dependability problems. But there is additional circumstantial evidence from which a jury could infer that Dr. Cleveland had knowledge of an unreasonable risk. *See, e.g., Cox v. Ky. Dep't of Transp.*, 53 F.3d 146, 151-52 (6th Cir. 1995) (reversing grant of summary judgment on immunity grounds because district court should have considered circumstantial evidence). If a jury were to conclude that Kersker knew of Douglas's actions, it could conclude that Dr. Cleveland, whom Kersker kept informed, also knew. Knowledge of the risk factors could be inferred as well because Maratea, Dr. Cleveland's direct subordinate, heard allegations from Chavis that Douglas drank alcohol and had sex at the morgue and that other employees did drugs at the morgue. Even if the jury found that Dr. Cleveland only knew about the serious dependability problems, a jury could conclude that he should have been more concerned about Douglas in general and instructed his subordinates to provide more supervision.

*Id.* Accordingly, the Sixth Circuit found that Dr. Cleveland was not entitled to immunity under Ohio Revised Code § 2744.03(A)(6)(b).

9

Because there still remains genuine issues of material fact as to knowledge on the part of Kersker and Dr. Cleveland, the County Defendants are not entitled to summary judgment, and their Motion is DENIED.

### B. Motion for Reconsideration

In ruling on the County Defendants' first Motion to Dismiss and Motion for Summary Judgment, this Court declined to dismiss Plaintiffs' pendant state law claims. (Doc. 108, PAGEID # 2856). The County Defendants argue that this Court should reconsider its exercise of supplemental jurisdiction over Plaintiffs' state law claims.

Although a motion for reconsideration is not mentioned in the Federal Rules of Civil Procedure, it is often treated as a motion to amend judgment under Rule 59(e). *McDowell v. Dynamics Corp. of America*, 931 F.2d 380 (6th Cir. 1991). There are three grounds for amending a judgment: (1) to accommodate an intervening change in controlling law; (2) to account for new evidence not available at trial; and (3) to correct a clear error of law or to prevent manifest injustice. *GenCorp., Inc. v. Am. Int'l Underwriters*, 178 F.3d 804, 834 (6th Cir. 1999) (citations omitted); *Gascho v. Global Fitness Holdings, LLC*, 918 F. Supp. 2d 708, 714 (S.D. Ohio 2013).

Defendants have not presented any arguments in this regard. Instead, Defendants reargue the reasons why this Court should decline to exercise supplemental jurisdiction. A motion under Rule 59(e) is not an opportunity to reargue a case. *Sault Ste. Marie Tribe of Chippewa Indians v. Engler*, 146 F.3d 367, 374 (6th Cir. 1998) (citation omitted). Therefore, Defendants' Motion for Reconsideration is DENIED.

## C. Motion to Certify Questions to the Ohio Supreme Court

The County Defendants argue that this Court should certify the following questions to the Ohio Supreme Court: (1) in Ohio, is there a dead body exception to the tort of negligent infliction of emotional distress in light of the Ohio Supreme Court's decision in *Heiner v. Moretuzzo*, 73 Ohio St.3d 80, 88-89, 652 N.E.2d 664 (1995) (Ohio does not recognize claim for negligent infliction of serious emotional distress where distress is caused by plaintiff's fear of nonexistent physical peril); and (2) in Ohio, to whom is the duty not to desecrate a dead body owed?

Federal courts may certify questions of law to the Ohio Supreme Court when "there is a questionable Ohio law that may be determinative of the proceeding and for which there is no other controlling precedent in the decision of [the Ohio Supreme Court]." Ohio Sup.Ct. R. Prac. XVIII, § 1. However, even "where there is doubt as to local law and where the certification procedure is available, resort to it is [not] obligatory." *Carolina Cas. Ins. Co. v. Panther II Transp., Inc.*, 402 F. App'x 62, 68 (6th Cir. 2010) (quoting *Lehman Bros. v. Schein*, 416 U.S. 386, 390-91 (1974)).

The Sixth Circuit has explained that "[l]ate requests for certification are disfavored." *Shaheen v. Yonts*, 394 F. App'x 224, 233 (6th Cir. 2010) (citing *Pennington v. State Farm Mut. Auto. Ins. Co.*, 553 F.3d 447, 450 (6th Cir. 2009); *see also Shaheen*, 394 F. App'x at 233 (quoting *Cantwell v. University of Mass.*, 551 F.2d 879, 880 (1st Cir.1977) ("We do not look favorably, either on trying to take two bites at the cherry by applying to the state court after failing to persuade the federal court, or on duplicating judicial effort."). "Untimeliness is itself a reason to deny the motion." *Carolina Cas. Ins. Co.*, 402 F. App'x at 68.

While Defendants attempted to raise the issue of certification before the Sixth Circuit, this was after this Court had already addressed the issues Defendants now seek to certify to the Ohio Supreme Court. Because Defendants' Motion to Certify is untimely, the Court DENIES the Motion.

### III. CONCLUSION

Based on the foregoing, it is hereby **ORDERED** that:

1. Plaintiffs' Motion to Strike Defendants' Motion for Summary Judgment (Doc. 124) is **DENIED**;

2. Defendants' Motion to Dismiss and Motion for Summary Judgment (Doc. 123) is **DENIED**;

3. Defendants' Motion for Reconsideration (Doc. 130) is **DENIED**; and

4. Defendants' Motion to Certify Questions to the Ohio Supreme Court (Doc. 131) is **DENIED**.

**IT IS SO ORDERED.**

                                         */s/ Michael R. Barrett*
                                    JUDGE MICHAEL R. BARRETT